UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re: Case No. 26-44562

DEXTER AVE DEVELOPMENT, LLC, Chapter 11

Debtor. Judge Thomas J. Tucker

______________________________________/

**ORDER REQUIRING DEBTOR TO AMEND DISCLOSURE STATEMENT**

On August 19, 2026, the Debtor filed a plan and disclosure statement, in a document entitled "Chapter 11 Combined Plan of Reorganization and Disclosure Statement of Dexter Ave Development, LLC" (Docket # 50). The Court cannot yet grant preliminary approval of the disclosure statement contained within this document ("Disclosure Statement"). The Court notes the following problems, which the Debtor must correct. (Some of these problems are relatively minor; some are not).

1. The Debtor must amend the Plan and Disclosure Statement so that it is clear that there is only one Debtor in this case, and so that the Plan and Disclosure Statement are consistent with how the Debtor defines Dexter Ave Development, LLC ("Debtor") in the first paragraph of the Plan, by replacing "Debtors" with "Debtor," and "Debtors'" to "Debtor's" in every place in Plan and the Disclosure Statement where they appear.

2. In subparagraph G of the Plan on page 4, the Debtor must replace "BAPCA" with "BAPCPA."

3. In the first paragraph of Article II of the Plan on page 8, which states: "For the purposes **or** approval and implementation of this Plan . . .", the Debtor must replace "or" with "of."

4. On page 8 of the Plan, the Debtor must give an estimate of the amount of the fees expected for "Profeesional Accounting Fees" and "Real Estate Appraiser Fees." Stating "TBD" is insufficient. And the Debtor does give a dollar estimate for these fees, in the Disclosure Statement on pages 31 and 32.

5. The Debtor must delete paragraph II.C treating Group III claims on page 9 of the Plan, for two reasons: (1) first, because there are no such claims, according to the Debtor; and (2) second, if there were any "other Priority Claims" of the type described in Group III on page 9, those claims would have to be classified and treated under Article III. 11 U.S.C. § 1123(a)(1) requires classification of all priority claims except those of a kind specified in 11 U.S.C. §§ 507(a)(2), (a)(3), or (a)(8).

6. The Debtor must revise the statement at the beginning of Article III on page 10 of the Plan, that "[t]he Plan shall be divided into two classes, . . . ." As will be seen, the Plan will consist of four classes, not two.

7. For the Class I secured claim of the Wayne County Treasurer treated on page 10 the Plan, the Debtor must state the priority of this secured claim (presumably, first priority). And in the paragraph describing the treatment for this claim, the Debtor must replace "assert" with "asserts."

8. In the first sentence describing the treatment of the Class II secured claim of Premium Home Realty, LLC on page 10 of the Plan, the Debtor must replace "Class IV" with "Class II." And the Debtor must correct the name of this secured creditor, to "Premium Homes Realty, LLC," everywhere it appears. And the Debtor must state the priority of this secured claim (presumably, second priority after the Wayne County Treasurer's secured claim).

9. Footnote 1 on page 11 of the Plan is difficult to understand. It appears to concern a different creditor than the creditor that is being treated in Class II in this case — "Premium Home Lending." The Debtor must either delete this footnote or clearly explain the connection between this creditor, the other case, and Premium Homes Realty, LLC.

10. The Debtor must delete the paragraph describing the treatment of Class III claims on page 11 of the Plan, because there are no such claims, according to the Debtor.

11. The Debtor must make the following changes to the paragraphs describing the treatment of Class IV claims on pages 11 through 12 of the Plan:

- The Debtor must renumber this class to Class III.
- The Debtor must modify the following sentence: "However, each of the claimants of this Class shall receive at least 100% (11,520.00) at 0% over 60 months." On page 12, the Debtor lists unsecured claims totaling $152,807.23, so $11,520.00 is **not** 100% of such claims.
- The Debtor must modify the statement on page 11 that claims in this Class are to be paid "commencing on the [E]ffective [D]ate of the Plan" because it is internally inconsistent with the claims in this class being paid "over years 3 through 5 of the Plan." With regard to Class IV claims (now to be Class III claims), the Plan states on page 12 that "A creditor in this class shall receive a distribution incident to its allowed unsecured claims based on monthly payments of $4244.64 commencing year three through five by Debtors. Unless addressed otherwise, payments to Class [IV] claims shall begin year 3 after the Effective Date."
- The Debtor must replace the reference to "Class VIII" on page 12 with "Class III."
- In the "Summary of Unsecured Creditors and Claims," the Debtor must replace "Premium Home Lending, LLC" with "Premium Homes Realty, LLC" in the creditor columns, and must explain how that creditor's unsecured (deficiency) claim amount is calculated to be $141,287.23. The Debtor must also include the amount of the unsecured deficiency claim in the section of the Plan describing the treatment of the secured claim (Class II).

12. The Debtor must replace "Class IX" with "Class IV" in all of the places it occurs in

the paragraph describing the treatment for claims of the "Interest of Equity Secur[ity] Holders" on page 12 of the Plan.

13. In footnote 2 of the Plan on page 12, the Debtor must add the fact that the claims deadline for governmental units is November 16. 2026. (*See* the Notice at Docket # 7, on page 2 ¶ 7).

14. Under the caption "Remedies" on page 13 of the Plan, in paragraph (a), the Debtor capitalizes the word "Default," but that word is not defined anywhere, and is different from the words used in the paragraphs just above it, which refer to "event[s] of default." The Debtor must correct this.

15. The Debtor must delete paragraph b under the caption "Remedies" on page 13 because Prescription Supply is not a creditor in this case.

16. In paragraph A under the caption "EXECUTION AND IMPLEMENTATION OF THE PLAN" on page 14 of the Plan, the Debtor states: "In the event the Debtor requires additional revenue to complete the Plan of Reorganization, it is reasonably certain that the source of these funds will be generated from their future operations." In context, this sentence does not seem to make sense. The Debtor must delete this sentence.

17. In paragraph B under the caption "EXECUTION AND IMPLEMENTATION OF THE PLAN" on page 14 of the Plan, the Debtor must delete all references to the "DIP Financing Order," because no such order has been entered in this case. The Debtor also must delete the last paragraph of this section, which concerns the nonexistent DIP Financing Order and DIP Facility.

18. In Article X under the caption "BEST INTEREST OF CREDITORS AND CRAM DOWN TESTS" on page 18 of the Plan, the Debtor must delete the last sentence of the first

paragraph that states: “ Therefore, the Debtor believes that acceptance of the Plan is in the best interest of the Creditors.” It is a duplicate of the sentence that precedes it.

19. In the first paragraph of Article XI of the Plan on page 19, the Debtor must replace “reinvest” with “revest.”

20. In Article XIV on page 20 of the Plan, the Debtor must capitalize “Effective Date” because it is a defined term, and must make the statement fully consistent with the definition of “Effective Date.”

21. In paragraph II.B.1 of the Disclosure Statement on pages 24-25, the Debtor must state the educational background and work history of Raymond Canty.

22. In paragraph II.B.2 of the Disclosure Statement on page 25, the Debtor states: “Raymond Canty will not take a salary and will receive draws when funds are available and the property is developed. Other than those fringe benefits listed herein, Debtor reasonably believes there are no other fringe benefits.” The statement regarding the compensation of Raymond Canty is too vague. The Debtor must state what Raymond Canty’s draw will be when funds become available, and list what fringe benefits he is getting. The statements regarding fringe benefits is confusing. Currently, there are no fringe benefits listed. And on page 34 of the Disclosure Statement, the Debtor states: “Debtor will pay no fringe benefits.” If Mr. Canty will not be paid any fringe benefits, the Debtor must say so in this paragraph. The Debtor also must state what exactly will need to occur for the property to be considered “developed.”

23. In the last sentence of paragraph II.C of the Disclosure Statement on page 26, the Debtor states: “ Between this Debtor and the Debtor Detroit Dumpster Depot, LLC, there is enough income to pay the secured claims owed to Premium Home Lending at a reduced interest

rate and cram down of the two properties." The Debtor needs to provide an explanation of what this sentence means, which includes answers to the following questions. Why is the Debtor describing the payment of a creditor (Premium Home Lending) that is not a creditor in this case? What are the two properties to which the Debtor refers in this sentence? What is the Debtor's relationship, if any, with Detroit Dumpster Depot, LLC?

24. In paragraph III.B of the Disclosure Statement on page 26, the Debtor must provide information regarding the "Order for Adequate Protection to Premium Home Realty, LLC" entered on June 24, 2026 (Docket # 48).

25. In paragraph IV.E of the Disclosure Statement on page 32, the Debtor states: "Upon information and belief, Debtor reasonably believes there is no **other** guaranteed debt." (Emphasis added). The use of "other" implies that the Debtor there is some guaranteed debt listed in the Plan or Disclosure Statement, but the Debtor has disclosed no guaranteed debt. If there is any guaranteed debt, it must be listed in this paragraph. If there is no guaranteed debt, the Debtor must delete "other" in the sentence quoted.

26. The Debtor must revise the section of the Disclosure Statement under the caption "Funding the Plan" on page 34 as follows:

- The Debtor must change "believe" to "believes" in the second paragraph.
- In the third paragraph, the Debtor states, in relevant part:

  > As set forth in the liquidation analysis prepared by Debtors, and as illustrated above, Debtor concludes that in the event that there is a liquidation, after payment of the expenses of administration, including professional fees, and secured claims, each unsecured creditor would receive substantially nothing than it shall receive under Debtor's proposed Plan.

Debtor must revise the preceding quote as follows:

> As set forth in the liquidation analysis prepared by Debtor, and as illustrated above, Debtor concludes that in the event that there is a liquidation, after payment of the expenses of administration, including professional fees, and secured claims, each unsecured creditor would receive nothing. Therefore, unsecured creditors would receive more under Debtor's proposed Plan.

- In the last paragraph, the Debtor states, in relevant part: "Canty will not take a salary, and will only receive draws as profits arise." The statement regarding the compensation of Raymond Canty is too vague. The Debtor must state what Raymond Canty's draw will be when profits arise. Also, this statement is internally inconsistent with what the Debtor states in paragraph II.B.2 of the Disclosure Statement on page 25. There the Debtor states: "Raymond Canty will not take a salary and will receive draws when funds are available **and the property is developed**." (Emphasis added). The Debtor must correct this problem.

27. The Debtor must reformat the spreadsheet containing the Debtor's projections, attached as Exhibit C, so that the bottom line of each page will not be cut off, in part, by the ECF filing information that will be placed at the bottom of the page when it is filed with the Court.

Accordingly,

IT IS ORDERED that no later than **September 4, 2026**, the Debtor must file an amended combined plan and disclosure statement entitled "First Amended Chapter 11 Combined Plan of Reorganization and Disclosure Statement of Dexter Ave Development, LLC" that is consistent with this Order.

IT IS FURTHER ORDERED that no later than **September 4, 2026**, the Debtor also must file a redlined version of the First Amended Chapter 11 Combined Plan of Reorganization and Disclosure Statement of Dexter Ave Development, LLC, showing the changes the Debtor has made to the "Chapter 11 Combined Plan of Reorganization and Disclosure Statement of Dexter

Ave Development, LLC” filed August 19, 2026.

**Signed on August 28, 2026**

**/s/ Thomas J. Tucker**

**Thomas J. Tucker**
**United States Bankruptcy Judge**